UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| GARY FORD | CIVIL ACTION |
| VERSUS | NO. 12-414-RLB |
| J.B. HUNT TRANSPORT, INC., ET AL. | CONSENT |

## RULING

Before the Court is Plaintiff Gary Ford's "Motion for Judgment Notwithstanding the Verdict, or in the Alternative, FRCP Rule 59(e) Motion to Alter or Amend Judgment, or Further in the Alternative, FRCP Rule 59(a) Motion for a New Trial." (R. Doc. 82) ("Motion"). Defendants J.B. Hunt Transport, Inc. and Tony Reid oppose the Motion. (R. Doc. 85). For the reasons set forth below, Plaintiff's Motion is **DENIED**.

I.  BACKGROUND

Plaintiff Gary Ford ("Plaintiff" or "Ford") worked as a Part's Manager at Simpson's Car Care Center in Baton Rouge, Louisiana. Defendant Tony Reid ("Reid") was employed as a truck driver and delivery person for Defendant J.B. Hunt Transport, Inc. ("J.B. Hunt") (collectively, "Defendants"). In his Petition, Ford alleges that he suffered severe personal injuries on June 8, 2011 based on the following account of Reid's manner of unloading a tire that struck Ford in the head:

> At the time of the incident that is the subject of this suit, defendant Tony Reid was unloading tires from a trailer and [Ford] was taking inventory of the tires while they were being unloaded, when suddenly and without warning, defendant Tony Reid negligently pushed a large tire from the closed end of a large trailer to the open end of the large trailer, out of the back of the trailer, in a quick and uncontrolled manner, causing the tire to strike the top of [Ford's] head, while [Ford] was located at the back of the trailer, with his head down, taking inventory of the tires being unloaded from the trailer, thereby causing the incident that is the subject of this suit.

(R. Doc. 1-4 at 3-4). In addition to Reid's alleged negligence in unloading the tires, Ford seeks to hold J.B. Hunt vicariously liable for Reid's negligence or directly liable for negligent hiring, training, and/or supervision of Reid. (R. Doc. 1-4 at 4).

Prior to trial, the parties stipulated to the following facts relevant to this Motion:

1. On June 8, 2011, Gary Ford was employed by and was in the course and scope of his employment with Simpson's Car Care Center.

2. On June 8, 2011, Tony Reid was employed by and was in the course and scope of his employment with J. B. Hunt Transport, Inc.

3. On June 8, 2011, between 3:00 and 3:30 PM, Tony Reid arrived at and began unloading tires at Simpson's Car Care Center.

4. Gary Ford was using the floor of the trailer on the driver's side corner as his desk to inventory the tires as they were rolled off the trailer.

5. At the time of the accident, the process of the unloading the tires was approximately one half complete.

6. Tony Reid did not intend to hit Gary Ford with a tire.

At trial, both Ford and Reid testified that Reid did not call out tire size numbers while unloading tires. Ford and Reid provided conflicting testimony, however, on whether Reid shouted out a warning before Ford was struck by the tire.

On July 18, 2014, after a four-day trial, the jury rendered a verdict in Defendants' favor finding that neither Reid nor J.B. Hunt was at fault for the June 8, 2011 accident. (R. Doc. 80). The first question on the verdict form asked the following question: "Was the June 8, 2011 accident caused by the negligence of Tony Reid?" The jury selected the answer "No." The second question on the verdict form asked the following question: "Was the June 8, 2011 accident caused by the negligence of J.B. Hunt Transport, Inc.?" The jury again selected the answer "No." Because the jury answered the first two questions in the negative, the jury form

directed the jury to have the foreperson sign and date the form and inform the Court that the jury had reached a verdict.

On July 23, 2014, the Court entered judgment for the Defendants and dismissed the matter. (R. Doc. 81).

On August 15, 2014, Ford filed the instant Motion arguing that based on the weight of the evidence, the jury could not reasonably conclude that neither Reid nor J.B. Hunt was at fault. Ford further requests, if the Court should determine that either Defendant was at fault despite the jury's verdict, to enter judgment in his favor on "causation, damages, and allocation of fault."

## II. LAW AND ANALYSIS

### A. Motion for Judgment Notwithstanding the Verdict

Ford first moves for judgment notwithstanding the verdict ("JNOV") on the issue of liability. Ford purports to bring his motion pursuant to a Louisiana statute, La. C.C.P. art 1811, and not the Federal Rules of Civil Procedure. Ford asserts that Louisiana law governs his JNOV motion in light of the Supreme Court ruling *Gasperini v. Center for Humanities*, 518 U.S. 415 (1996).

In *Gasperini*, the defendant moved for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure where the jury awarded $450,000 in damages to the plaintiff where the defendant lost 300 slide transparencies placed in its care. *Id.* at 419. After the verdict, the defendant claimed, in part, that the jury verdict was excessive because it awarded $1,500 for each of the slide transparencies. The Supreme Court concluded that the New York statute[1] governing appellate review of excessive awards when the jury returns an itemized verdict constituted substantive law and must be applied in diversity actions where a party seeks a new trial based on an excessive jury award. *Id*. at 437-38.

---

[1] N.Y. Civ. Prac. Law and Rules (CPLR) § 5501(c).

In light of the *Gasperini* decision, the Fifth Circuit has held that "a district court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy, and appellate control of the district court's ruling is limited to review for 'abuse of discretion.'" *Foradori v. Harris*, 523 F.3d 477, 497-98 (5th Cir. 2008) (citing *Gasperini*, 518 U.S. at 419); *see also Matheny v. Chavez*, No. 14-30013, -- F. App'x --, 2014 WL 6601029, at *3 (5th Cir. Nov. 21, 2014) ("In a diversity action in which Louisiana law applies, a motion for a new trial based on an excessive or inadequate jury award is governed by Louisiana state law.") (citing *Fair v. Allen,* 669 F.3d 601, 604 (5th Cir. 2012)). Where defendants have asserted that a jury award is excessive in a diversity action, the Fifth Circuit has reviewed the jury verdict in light of the relevant state's additur/remittitur statute. *See*, *e.g.*, *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 254 (5th Cir. 2013) (Miss. Code Ann. § 11-1-55); *Great W. Cas. Co. v. Rodriguez-Salas*, 436 F. App'x 321, 328 (5th Cir. 2011) (La. C.C.P. art. 1814); *Mississippi Phosphates Corp. v. Analytic Stress Relieving, Inc.*, 402 F. App'x 866, 870 (5th Cir. 2010) (Miss. Code Ann. § 11-1-55); *Foradori*, 523 F.3d 477 (Miss. Code Ann. § 11-1-55).

Since the *Foradori* decision, the Fifth Circuit has also applied state law to motions for an alteration of the judgment, or for a new trial, where the plaintiff argues that its awarded damages were too low. *See Fair v. Allen*, 669 F.3d 601 (5th Cir. 2012) (applying La. Code Civ. P. arts. 1972 and 1973); *Brown v. Wal-Mart Louisiana, L.L.C.*, 565 F. App'x 293 (5th Cir. 2014) (applying La. Code Civ. P. 1811). In *Brown*, the Fifth Circuit concluded that a motion for JNOV seeking, in part, an increase in the jury award was governed by the Louisiana JNOV statute and relevant jurisprudential standards. *Brown*, 565 F. App'x 293. In the instant case, the jury did not find the defendants liable and did not reach the issues of damages. The Court need not

determine, however, whether this sufficiently distinguishes this case from the Fifth Circuit's conclusion in *Fair* and *Brown* that Louisiana law applies to JNOV and new trial motions when exercising diversity. Under both the federal rule (Fed. R. Civ. P. 50(b)) [2] and the Louisiana statute (La. Code Civ. P. 1811), the Court would not grant JNOV or judgment as a matter of law.[3]

Under federal law, judgment as a matter of law should be granted "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). The Court should grant judgment as a matter of law only if "the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273 (5th Cir. 1997)

---

[2] The 1991 amendments to Rule 50(a) of the Federal Rules of Civil Procedure provide that "[i]f a motion is denominated a motion for directed verdict or for judgment notwithstanding the verdict, the party's error is merely formal. Such a motion should be treated as a motion for judgment as a matter of law in accordance with this rule." Fed. R. Civ. P. 50 (advisory notes). *See Morris v. Jefferson Parish Sheriff's Office*, 45 F. App'x 322 (5th Cir. 2002) ("The Federal Rules of Civil Procedure were amended in 1991 to change the terminology for pre-verdict motions for directed verdict and post-verdict motions for judgment notwithstanding the verdict (JNV)."); 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2537 (3d ed. 2010) ("The 1991 amendment of Rule 50 changed the terminology again so that the motion for judgment notwithstanding the verdict has become another form of the motion for judgment as a matter of law. In effect, the motion for judgment notwithstanding the verdict simply was recharacterized as a renewed motion for judgment as a matter of law.").

[3] The parties do not discuss whether the motion for JNOV is procedurally deficient. Under federal law, the movant may not bring a rendered motion for judgment as a matter of law pursuant to Rule 50(b) unless he or she moved for judgment as a matter of law pursuant to Rule 50(a) at the close of all the evidence. *See* Fed. R. Civ. P. 50(b). Ford did not move for judgment as a matter of law at the close of the evidence. It is not clear, however, whether this procedural bar applies to a motion for JNOV brought pursuant to Louisiana law. In *Brown*, the Fifth Circuit noted that trial judge construed motion for JNOV as renewed motion for judgment as a matter of law under Rule 50(b), but found that the plaintiff failed to first move for judgment as a matter of law at the close of evidence pursuant to Rule 50(a). *See Brown*, 565 F. App'x at 295 n.2. The Fifth Circuit went on, however, to consider the motion for JNOV pursuant to Louisiana Code of Civil Procedure article 1811 and associated jurisprudence. *Id*. at 295-96. If article 1811(A)(1) applies to this action, then Ford's motion would be untimely because the motion was filed more than seven days after the service of judgment. The Court need not determine whether Ford's motion should be denied on procedural grounds, however, because the motion can be denied even if the substantive standards of review are applied.

(quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)). "In evaluating [a Rule 50] motion . . . the court is to view the entire record in the light most favorable to the non-movant, drawing all factual inferences in favor of . . . the non-moving party, and leaving credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts to the jury." *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986)). Similarly, under Louisiana law, "[a] JNOV motion 'should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover." *See Brown*, 565 F. App'x at 295 (quoting *Joseph v. Broussard Rice Mill, Inc.*, 772 So. 2d 94, 99 (La. 2000)); *see also Trunk v. Medical Center of Louisiana*, 885 So. 2d 534, 537 (La. 2004) ("A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes reasonable persons could not arrive at a contrary verdict.") (quoting *Joseph*, 772 So.2d at 99); *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So. 2d 35, 52 (La. 2006) ("[T]he court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.").

Under either the federal or Louisiana standard, the Court denies Ford's motion for JNOV. The evidence in the record does not point so strongly in favor of a Ford that the Court must conclude that reasonable jurors must have arrived at a contrary verdict. Reviewing all factual inferences in favor of the Defendants, the Court finds that the evidence in the record supports the jury's verdict that neither Reid nor J.B. Hunt was at fault. Ford primarily argues that in light of the fact he and his co-workers had never been injured before while unloading tires, the Defendants must have done something that deviated from the standard of reasonable care. As

discussed more fully below, this argument is not supported by the evidence. Ford also argues that the jury should believe his version of certain events (such as whether Reid shouted out a warning before the tire struck Ford) but that determination is a credibility call that is reserved to the jury that the Court finds no reason to disturb. Finally, Ford suggests that the jury must have ignored the evidence before it in light of the brevity of the jury's deliberations and allegedly prejudicial statements by defense counsel and Defendants' vocational expert during trial. These arguments do nothing to demonstrate that the evidence in the record strongly supports a contrary verdict. As discussed more fully below in the context of Ford's motion for a new trial pursuant to Rule 59(a), the evidence supports the jury's verdict.[4]

### B. Alternative Motion to Alter or Amend Judgment

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). A Rule 59(e) motion to alter or amend the judgment "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Rule 59(e) is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). Instead, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 479 (quoting *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir.1989) (internal quotations omitted)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479. This Court may properly decline to consider new arguments or new evidence on reconsideration where those arguments were available to the movant prior to the Order and Judgment. *Id.* at 478-79.

---

[4] *See infra*, Section II.C.

Ford argues that "based on the same evidence and testimony set forth [in support of his motion for judgment notwithstanding the verdict]" the Court's judgment based upon the jury's verdict should be altered or amended (1) to correct a manifest error of law and/or fact; and (2) to prevent manifest injustice. (R. Doc. 82-1 at 22-23). Ford has not brought forth any newly discovered evidence or asserted any intervening change in the law. Ford has not argued that the Court's judgment deviates from the jury verdict. Instead, Ford is challenging the validity of the jury verdict itself. Ford argues that the judgment contains "manifest errors" and would result in "manifest injustice" is based solely on his arguments that the weight of the evidence was in his favor on liability, and that the Court should alter or amend its judgment in a manner inconsistent with the jury's verdict by concluding that Reid and J.B. Hunt were at fault.

The Court determines that the jury's verdict was supported by the evidence. Accordingly, for the reasons stated in this ruling, the Court cannot conclude under Rule 59(e) that a manifest error of law, error of fact, or injustice has occurred warranting alteration or amendment of the judgment.

    **C.**    **Alternative Motion for New Trial**

After a jury trial, Rule 59(a) of the Federal Rules of Civil Procedure permits the Court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Although the rule does not specify the exact grounds for granting a new trial, Rule 59(a) allows a court to grant a new trial if it "finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *See Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citing *Reed Bros., Inc. v. Monsato Co.*, 525 F.2d 486, 499-50 (8th Cir. 1975)). It

is within the "sound discretion of the trial court" to determine whether to grant or deny a motion for new trial. *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

When a party moves for a new trial on evidentiary grounds, the court will not grant a new trial unless "the verdict is against the great weight of the evidence." *Id*. Ultimately, the court must view the evidence in "a light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion." *Dawson v. Wal-Mart Stores*, 978 F.2d 205, 208 (5th Cir. 1992) (citing *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 987 (5th Cir. 1989)). Because the trial court is re-weighing the evidence, the "[a]gainst the great weight of the evidence is a confining standard; a lesser standard would damage the jury's role as the principal trier of fact." *Scott v. Monsanto Co.*, 868 F.2d 786, 791 (5th Cir. 1989) (citing *Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir. 1976)). "Where the jury could have reached a number of different conclusions, all of which would have sufficient support based on the evidence, the jury's findings will be upheld." *Scott*, 868 F.2d at 791.

It is unclear whether state law standards applies to Ford's motion for a new trial pursuant to Rule 59(a) in this action because the issue of damages was not reached in the jury verdict. The Fifth Circuit has directed courts reviewing verdicts in diversity actions to consider Louisiana law in the context of challenges to the excessiveness or inadequacy of jury awards.[5] Here, there

---

[5] Prior to the *Gasperini* decision, the Fifth Circuit stated that in a diversity case "state law determines the type of evidence that must be produced to support a verdict, but 'the sufficiency or insufficiency of the evidence in relation to the verdict is indisputably governed by a federal standard.'" *Jones*, 870 F.2d at 986 (quoting *McCandless v. Beech Aircraft Corp*., 779 F.2d 220, 223 (5th Cir.1985)). The Fifth Circuit expressly overruled *Jones* in light of the *Gasperini* decision. *See Fair*, 669 F.3d at 604. District courts have recognized the Fifth Circuit's instruction in *Foradori* and *Fair*. *See Body By Cook v. Ingersoll-Rand Co.*, No. 13-175, 2014 WL 4064022, at *12 (E.D. La. Aug. 15, 2014) (applying Louisiana standards for determining whether a new trial is merited where the defendant argued that the evidence showed that the

9

is no jury award to be challenged because the jury concluded that the Defendants were not at fault.

Even if Louisiana applied to Plaintiff's motion for a new trial, the Court would reach the same conclusion below. Under Louisiana, a party may seek a new trial under both peremptory and discretionary grounds. *See* La C.C.P. art. 1972 (peremptory grounds);[6] La. C.C.P. art. 1973 (discretionary grounds).[7] The Louisiana Supreme Court has cautioned that the trial court's discretion in granting new trials is limited:

> The fact that a determination on a motion for new trial involves judicial discretion . . . does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.

*Davis v. Wal-Mart Stores, Inc.*, 774 So.2d 84, 93 (La. 2000) (emphasis and citations omitted).

As set forth in this ruling, the Court has determined that under both the federal and Louisiana standards, a new trial should not be granted.

---

plaintiff's claims were prescribed); *Harang v. Schwartz*, No. 13-58, 2014 WL 4084939, at *14 (E.D. La. Aug. 15, 2014) (Louisiana law applied to Rule 59 motion challenging sufficiency of evidence in contract dispute).

[6] Pursuant to Louisiana Code of Civil procedure article 1972: "A new trial shall be granted, upon contradictory motion of any party, in the following cases: (1) When the verdict or judgment appears clearly contrary to the law and the evidence. (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial. (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

[7] Pursuant to Louisiana Code of Civil procedure article 1973: "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."

### 1.     Weight of the Evidence

Ford contends that, contrary to the jury's determination, that the evidence presented at trial was so strong and so overwhelming that reasonable persons could not conclude that neither Reid nor J. B. Hunt were at fault for the accident. (R. Doc. 82-1 at 2-8). He argues that the jury's verdict "was clearly against the weight of the evidence and constitutes a manifest error of law and fact. (R. Doc. 82-1 at 24-25). The Court will therefore consider whether the evidence offered at trial points so strongly and overwhelmingly in Ford's favor that reasonable persons could conclude that neither Reid not J. B. Hunt were at fault. In other words, the Court will determine whether the jury verdict goes against the weight of the evidence presented and whether the verdict is supported by a fair interpretation of the evidence.

This is a negligence action. In its final jury instructions, the Court informed the jury of the following standards for determining whether Reid or J. B. Hunt was at fault for the accident:

> The basic law in Louisiana on this kind of case is found in Article 2315 of the Louisiana Civil Code: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
> The word "fault" in this article is a key word. "Fault" means a type of conduct that a person should not have engaged in—he has acted as he should not have acted or he has failed to do something that he should have done. The law thus regards the conduct as being below the standard or measure which applies to the defendant's activities.
> The standards which the law applies to the defendant's conduct will change according to the nature of his activity and the surrounding circumstances. Your job is to decide if the plaintiff has proved by a preponderance of the evidence that the defendant's conduct fell below those standards. To put it briefly, you have to decide if the plaintiff has proved that the defendant's conduct was sub-standard and thus he is, in legal terms "at fault." In this particular case, the plaintiff says that the defendant has committed the kind of fault that the law calls "negligence."[8]

---

[8] Negligence is an example of 'fault' within the meaning Article 2315 of the Louisiana Civil Code. *Gulf Ins. Co. v. Employers Liab. Assur. Corp.*, 170 So. 2d 125, 127 (La. Ct. App. 1964); *see also Larkin v. U. S. Fid. & Guar. Co.*, 258 So. 2d 132, 136 (La. Ct. App. 1972) ("The word 'fault,' as envisioned in [Article 2315], is synonymous with 'negligence.'").

> In this case, the basic standard is that the defendant must exercise the degree of care that we might reasonably expect from an ordinarily prudent person under the same or similar circumstances. The standard of care is not that of an extraordinarily cautious individual or an exceptionally skilled person, but that of a person of ordinary prudence.

Whether Reid and J.B. Hunt breached their duty to act reasonably under the circumstances is a question of fact reserved for the jury to answer. *Mundy v. Dep't of Health & Human Res.*, 620 So. 2d 811, 813 (La. 1993). Ford carries the burden of proving fault, causation and damages. *Wainwright v. Fontenot*, 774 So. 2d 70, 74 (La. 2000) (citing *Buckley v. Exxon Corp.*, 390 So.2d 512, 514 (La. 1980)).

Ford raises various arguments in support of his contention that the evidence offered at trial points so strongly and overwhelmingly in his favor that reasonable persons could not have reached the jury's conclusion that neither Reid nor J.B. Hunt was at fault.

First, Ford notes that he and two of his former co-workers (Don Gerard and Chad Becnel) testified that they had each participated in the unloading of at least 80,000 tires resulting in no injuries. (R. Doc. 82-1 at 2-3). Based on this testimony, Ford suggests that the jury had to conclude that one or both of the Defendants were at fault for the accident at issue because the Defendants were the only other parties involved that day with the unloading of the tire. Defendant correctly points out that this argument consists of a *post hoc* fallacy. (R. Doc. 85 at 6-7).[9] That Ford and his co-workers had not experienced prior accidents when conducting tire inventories does not support a finding of, much less establish, that either Reid or J.B. Hunt was at fault in this particular instance. As discussed below, ample evidence in the record supports the jury's verdict that neither Reid nor J.B. Hunt was at fault.

---

[9] *See Huss v. Gayden,* 571 F.3d 442, 459 (5th Cir. 2009) (noting that "the *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence," which is a "false inference"); *Tampa Times Co. v. National Labor Relations Board,* 193 F.2d 582, 583 (5th Cir. 1952) (*post hoc ergo propter hoc* is not sound logic). Ford asks the Court to infer that because Reid and J.B. Hunt were the only other parties involved, any accident must be a result of their fault.

Second, Ford notes that he, Mr. Gerard, and Mr. Becnel testified that all other drivers they have interacted with, including those employed by J. B. Hunt, "called out the tire size numbers when they were unloading the trailers." (R. Doc. 82-1 at 3, 6). In contrast, Reid testified that he did not call out tire size numbers because J. B. Hunt told its drivers they were not required to call out the tires size numbers. (R. Doc. 88 at 58). Ford suggests that the testimony provided by Ford and his witnesses establishes that J. B. Hunt instructed its drivers to announce tire sizes. In response, the Defendants argues that the fact that other drivers may have announced tire sizes did not establish that they were instructed to do so by J.B. Hunt. (R. Doc. 85 at 8).

Ford argues that whether Reid called out tire size numbers is relevant to the issue of fault because in his and his co-workers' past experiences the drivers called out tire size numbers and there were no accidents. This is yet another fallacious *post hoc* argument. It was up to the jury to weigh the evidence to determine whether the fact that Reid did not call out tire size numbers resulted in fault. There was ample evidence presented at trial to suggest that not having the driver call out tire size numbers was a safer method of unloading tires because it would require the person taking inventory to look up at the tires, rather than just down at the inventory papers. Reid testified that other customers did not require tire size numbers to be called out because they would wait until the tire hit the ground where they would scan its bar code sticker for inventory purposes. (R. Doc. 88 at 58-59). Furthermore, Ford's own testimony suggested that he placed himself in a position that risked injury by choosing to stand at the trailer bed and using the trailer bed as a desk. (R. Doc. 87 at 28).[10] The Court cannot conclude that the fact that Reid did not call out tire size numbers supports a finding that the jury's verdict was against the weight of the evidence.

---

[10] Ford testified that at the time he was struck he was looking down at his papers and making tick-marks on the papers. (R. Doc. 86 at 70).

On a related note, Ford argues that if J.B. Hunt did not instruct its drivers to call out tire size numbers, then J.B. Hunt should have been found to be at fault. (R. Doc. 82-1 at 5-6). Neither party sought testimony of a J. B. Hunt representative on this issue. Accordingly, the only evidence before the jury regarding whether J. B. Hunt instructed Reid to call out tire size numbers was Reid's testimony. It was up to the jury to determine whether to believe that testimony. Furthermore, as discussed above, there was amble evidence in the record to conclude that even if J.B. Hunt did instruct Reid (and its other employees) not to call out tire size numbers, then that would be a reasonable approach to unloading trucks full of tires, and was the preferred method of most customers.

Third, Ford argues that Reids' testimony is contradictory because he testified that he could not see both Ford and the tires while unloading, but also testified that he yelled "look out" or "heads up" to Ford when he saw the tire about to hit Ford. (R. Doc. 82-1 at 4). Ford further argues that based on demonstrative evidence presented at trial, Reid could clearly see the tires and Ford at the same time. (R. Doc. 82-1 at 4). Reid testified, in relevant part, as follows while being questioned by plaintiff's counsel:

> Q On the day of the accident between the time you started the spot-tire process and the time of the accident you asked Mr. Ford numerous times to please get out of the way because you couldn't watch him and the tires at the same time, correct?
>
> A Yes, sir, I did.
>
> Q And you asked him, "Please don't stand directly in the back of the trailer," correct again?
>
> A Yes, I did.
>
> Q And you even heard some of Gary's guys tell him something to the effect of, "Get out of the way. You're in the way. Gary, we got this," correct?
>
> A That's, that's correct.

(R. Doc. 88 at 58). Based on this testimony, the jury could reasonable infer that Reid was simply asserting that he could not see Ford at all times while he was working with unloading the tires. It is not inconsistent with this testimony that Reid warned Ford of a tire he rolled toward the back of the truck was going to strike Ford. The jury's findings are reasonable, and supported by the evidence.

Finally, Ford argues that Reid's testimony that he loudly shouted out a warning of "heads up" or "look out" before the tire struck Ford is unbelievable. (R. Doc. 82-1 at 4-5). Ford testified that he did not hear any warning. (R. Doc. 87 at 46). Ford's co-workers on the day of the accident (Kenyoda Butler, David Simmons, and Chad Becnel) were unable to confirm or deny that Reid's testimony that he shouted a warning. (R. Doc. 86 at 60-61, 64; R. Doc. 87 at 182). Faced with these alternate possibilities, and evaluating the demeanor and credibility of each witness, it would be reasonable for the jury to believe Reid over Ford on this issue, and the Court finds no grounds for disturbing this credibility determination or the weight provided to it by the jury. "Issues of credibility, considered by the trial court in this context, are more akin to evaluations of the weight of the evidence than to evaluations of the believability of various witnesses." *Scott*, 868 F.2d at 791 (citations omitted); *see also Bovie-Clark v. Sentry Select Ins. Co.*, 568 F. App'x 312, 313 (5th Cir. 2014) ("[M]ere dissatisfaction with the jury's weighing of evidence or determination of witness credibility is not a valid ground on which to grant judgment as a matter of law, a new trial, or alteration of the judgment.").[11]

---

[11] Defendants also argue that Reid did not have a duty to give a specific warning to Plaintiff regarding the tire, because it was in his view and he was aware that it was coming his way. (R. Doc. 85 at 9). In support of this proposition, Defendants rely upon *Murphy v. Podgurski*, So. 2d 508, 509 (La. App. 4 Cir. 1970) (golfers have no duty to give the traditional warning "fore" or other "advance warning to persons on contiguous holes or fairways, where the danger to them is not reasonably anticipated *nor is he under a duty to give a specific warning to another player whom he knows already has him in view and is aware of his intended drive*") (emphasis added). The Court need not determine whether Reid had a duty to warn Ford of the tire because there is evidence that Reid actually did provide a warning. Furthermore, the

15

Based on the foregoing, there was sufficient evidence presented at trial demonstrating that Reid was objectively reasonable in the manner in which he unloaded the truck of tires. The jury verdict did not go against the weight of the evidence presented and that verdict is supported by a fair interpretation of the evidence.

### 2. Jury Prejudice

Ford also argues that he is entitled to a new trial because the jury was prejudiced against him in light of certain statements made by defense counsel and Defendants' witnesses during trial. Ford claims that the jury's deliberations of one hour and twenty minutes was too brief, and must indicate the jury's disregard of the evidence. (R. Doc. 82-1 at 8-11).

Other than turning to pure speculation, the Court cannot determine why the jury deliberated for the length of time that they did. As discussed above, there was ample evidence in the record to support the jury's findings regardless of how long it took them to reach a verdict. Ford has not cited any law for the proposition that the length of jury deliberation is a basis for a new trial (or amending a judgment based on a jury verdict). (R. Doc. 82-1 at 8). Ford theorizes, however, that the jury's deliberation was relatively brief because the defense counsel, during closing argument, stated the following told the jury that all they had to do was answer "No" to Question Numbers 1 and 2 on the verdict form and then they would be finished. (R. Doc. 82-1 at 10). This statement is entirely consistent with the agreed verdict form, and therefore the comment was not "either false nor without basis in the record," which would potentially implicate the interest of substantial justice. A closing statement may implicate the interest of substantial justice when counsel's assertions are "either false or without basis in the record."

---

Court finds Ford's arguments regarding "notice" in the context of premise and animal liability (R. Doc. 82-1 at 7-8) are not pertinent to the jury's determination of fault in this negligence action. *See Lemoine v. Jefferson Parish Dept. of Water*, 646 So. 2d 1194 (La App. 5 Cir. 1994) (defendant had no notice of defect in premise liability case); *Pepper v. Triplet*, 864 So. 2d 181 (La. 2004) (analyzing "first bite" rule for dog bites).

16

*Wallner v. Ziegler*, 470 F. App'x 230, 233 (5th Cir. 2012) (citing *Hall v. Freese,* 735 F.2d 956 (5th Cir. 1984)). To the extent defense counsel's statement may have suggested, as Ford argues, a motive to reach its verdict quickly on the issue of fault, the following closing instruction provided by the Court before deliberations rehabilitated the jury:

> You have been chosen from the community to make a collective determination of the facts in this case. What the community expects of you, and I expect of you, is the same thing you would expect if you are a party to this suit: an impartial deliberation and verdict based solely and exclusively on the facts and evidence presented in this case and on nothing else. This means that you cannot be governed by passion, prejudice, sympathy, or any motive whatsoever except a fair and impartial consideration of the facts and evidence.

Based on the foregoing, the Court concludes that defense counsel's statement during closing argument is not a basis for granting a new trial.

Ford also argues that certain statements made by the Defendants' Vocational Rehabilitation expert, Ms. Karen Keller, prejudiced the jury. First, Ford raises his concern that Ms. Keller mentioned during her testimony (in the context of listing the documents she reviewed prior to giving testimony) that she reviewed a worker's compensation file. (R. Doc. 8-9).[12] Ford argues that this reference to worker's compensation was prejudicial and in violation of the Court's order that "all references to Plaintiff's entitlement to and recovery of worker's compensation benefits from his employer shall be excluded" from evidence pursuant to Rule 403 of the Federal Rules of Evidence. (R. Doc. 70 at 4). Ford argues that "the bell was rung" and could not be "un-rung." (R. Doc. 82-1 at 9). The Court disagrees. After plaintiff's counsel objected to Ms. Keller's statement about worker's compensation, the Court required defense counsel to inform Ms. Keller not to discuss worker's compensation benefits during her

---

[12] Ms. Keller stated the following prior to the objection: "I reviewed a Summit workers' compensation file and investigative summary." (R. Doc. 88 at 76).

testimony. (R. Doc. 88 at 78-79).[13] Furthermore, to the extent the jury may have been prejudiced by the reference to workers' compensation, which the Court finds unlikely, the following closing instruction provided by the Court before deliberations specifically instructed the jury to disregard any consideration of workers' compensation in fashioning an appropriate award:

> In reaching a verdict on the question of damages, I caution you not to include anything for the payment of court costs and attorney fees; the law does not consider these as damages suffered by the plaintiff. If you decide to make an award, follow the instructions I have given you, and do not add or subtract from that award on account of federal or state income taxes. In other words, if you find that the plaintiff is entitled to damages, the amount which you award should be the sum that you think will fully and fairly compensate the plaintiff for his injuries, without regard to what he may pay his attorney or the amount that you might think would be paid in income taxes.
> Also, do not add or subtract any amount on account of health insurance, COBRA insurance, Medicaid, Medicare, Workers Compensation benefits, Short Term Disability benefits, Long Term Disability benefits, and/or any other benefits of any kind. If any additions or subtractions should be made on account of the above-mentioned items, the Court will do so at the appropriate time.

Finally, and perhaps most importantly, the jury never reached the issue of damages, as they did not find Reid or J.B. Hunt to be at fault. Accordingly, the issue of whether the jury would deduct perceived recovery of workers' compensation benefits from any award made to Ford never arose.

Second, Ford argues that the jury was prejudiced because Ms. Keller, when asked whether she took issue with any testimony given by Plaintiff's Vocational Rehabilitation expert, Mr. Louis Lipinski, stated that her profession's code of ethics prevents her from making disparaging remarks about a colleague. (R. Doc. 82-1 at 9).[14] Plaintiff argues that Ms. Keller's

---

[13] In light of the Court's ruling on the exclusion of "workers' compensation" from evidence, both plaintiff's counsel and defense counsel redacted documents and deposition testimony concerning workers' compensation.

[14] Ms. Keller stated the following when asked by defense counsel whether she took issue with some of Mr. Lipinski's testimony in court the prior day: "Well, let me just put this caveat in. As a vocational rehabilitation counselor, my code of ethics, you know, dictates that I not make any disparaging remands against any other . . . colleagues." (R. Doc. 88 at 83-84).

comment was derogatory and tantamount to impermissible character evidence. (R. Doc. 82-1 at 9).[15] The Court sustained plaintiffs objection and instructed the jury to disregard Ms. Keller's answer. (R. Doc. 88 at 84-86). Accordingly, any prejudice from the statement was cured and the jury was rehabilitated.

Ford also argues that a question posed by defense counsel regarding where he was staying during the course of the trial was prejudicial because it made him appear wealthy and suggested that he did not need to recover in this action. (R. Doc. 82-1 at 9).[16] That Ford stayed in a hotel close to the courthouse during his four-day trial is not necessarily an indication of great wealth. Indeed, wealth or costs were no part of the questioning at issue. Furthermore, there was evidence in the record that Ford earned a modest salary between $30,000 and $35,000 in the years prior to the accident. (R. Doc. 87 at 72). Ford's argument that the jury was prejudiced against him based upon his wealth is unsupported by the record. As stated earlier, the jury's verdict is supported by a fair interpretation of the evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court will not disturb the jury's verdict that the Defendants, Tony Reid and J.B. Hunt Transport, Inc., were not at fault for the accident. The Court's judgment reflects that verdict, and the Court will not grant a new trial or otherwise

---

[15] Ford does not make any specific argument pursuant to the Federal Rules of Evidence in support of his contention that the remark was impermissible character evidence.

[16] Specifically, defense counsel asked the following question: "You were staying at the Downtown Hilton during the course of this trial, weren't you?" (R. Doc. 89 at 54). Plaintiff's counsel objected on the basis of lack of foundation and defense counsel explained during the sidebar that he was laying foundation to discuss certain physical activities he witnessed Ford doing at the hotel. (R. Doc. 89 at 54). The Court sustained the objection and defense counsel did not reference the hotel again. (R. Doc. 88 at 55-57). Defense counsel's line of questioning would have presumably relied, in part, on counsel's own interaction with, and counsel's personal observations of, the Plaintiff.

19

amend or alter the judgment. The Court need not address the parties' additional arguments regarding the amount of damages.[17]

**IT IS ORDERED** that Plaintiff's Motion (R. Doc. 82) is **DENIED**.

Signed in Baton Rouge, Louisiana, on January 22, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[17] Ford devotes a significant portion of his memorandum in support on these issues. (R. Doc. 82-1 at 12-22).